UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RAVENSWOOD CITY SCHOOL DISTRICT,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>J.S., a minor, et al.,<br><br>　　　　Defendants. | Case No: C 10-03950 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING DEFENDANT'S CROSS-MOTION FOR STAY PUT ORDER**<br><br>Docket 42, 64 |

　　　　Plaintiff Ravenswood City School District ("the District") seeks judicial review of an adverse Decision ("Administrative Decision") rendered by Administrative Law Judge Rebecca P. Freie ("the ALJ") of the California Office of Administrative Hearings ("OAH") following a due process hearing conducted pursuant to the Individual with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1415(i)(2)(A). In particular, the District objects to the ALJ's ruling in favor of the minor student, J.S., requiring the District to pay for his special education at Stellar Academy and for 600 hours of tutoring.

　　　　The parties are presently before the Court on J.S.'s motion for a "stay put" order under 20 U.S.C. § 1415(j) to maintain his placement at Stellar Academy and the District's motion for a preliminary injunction to stay the Administrative Decision. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS J.S.'s motion for a stay put order and DENIES the District's motion for preliminary injunction. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. OVERVIEW OF THE IDEA

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  Under Part B of the IDEA, a state must provide disabled children between the ages of three and twenty-one with special education and related services under an Individualized Education Program ("IEP").  20 U.S.C. § 1412(a)(1)(A), (a)(4).  An IEP is a written statement that is developed for each disabled child by an IEP team, typically consisting of the parents, a special education teacher, a representative of the local education agency, an expert, and, sometimes, the child. 20 U.S.C. § 1414(d); Christopher v. Stanislaus County Office of Educ., 384 F.3d 1205, 1208 n.1 (9th Cir. 2004).

Parents who are dissatisfied with an IEP may file a complaint triggering a meeting with the IEP team "where the parents of the child discuss their complaint" and the educational agency "is provided the opportunity to resolve the complaint …."  20 U.S.C. § 1415(f)(1)(B)(i)(IV).  If the complaint is not resolved "to the satisfaction of the parents within 30 days of the receipt of the complaint," the parents may request a "due process hearing."  20 U.S.C. § 1415(f)(1)(B)(ii).  Following such a hearing, "[a]ny party aggrieved by the findings and decision … shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States."  20 U.S.C. § 1415(i)(2)(A).  The minor student has a right to "stay put" in his or her current educational placement during the pendency of proceedings under the IDEA.  20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d).

### B. FACTUAL SUMMARY AND PROCEDURAL HISTORY

J.S. is a minor student with a learning disability who resides in the District. Administrative Decision ("AD") 8.  In 2004, J.S. began attending Kindergarten at Edison-

Brentwood Academy, a charter school located in the District. AD 8. After J.S. was held back and required to repeat the first grade, the District began assessing whether J.S. should be provided with special education services to address his difficulties with reading, writing and math. Compl. ¶ 19. On September 11, 2008, J.S. was found eligible for special education based on his learning disability. AD 8.

On February 28, 2010, J.S. filed a request with the OAH for a due process hearing regarding the District's alleged failure to provide him with a FAPE since his enrollment in the District. Compl. ¶ 38. The District also requested a hearing on whether the placement and services offered in the February 3, 2010 IEP constitute a FAPE. Id. The due process hearing took place before the ALJ on May 17-20, 24-27, June 3-4 and 7-9, 2010. AD 1. On August 20, 2010, the ALJ issued a forty-seven page Administrative Decision in which she found that the District had failed to provide J.S. with a FAPE, as required by the IDEA, for the 2007-2008, 2008-2009 and 2009-2010 school years, and that J.S. had suffered academically as a result. AD 39-45. Accordingly, the ALJ ordered the District to pay tuition, fees and transportation costs for J.S. to attend Stellar Academy for the next three years as compensatory education, including summer programs. AD 47. In addition, she ordered the District to pay for 600 hours of tutoring, also as compensatory education. Id.

Subsequent to the ALJ's ruling, counsel for J.S. contacted the District regarding the implementation of the Administrative Decision. Casillas Decl. ¶ 5. In response, counsel for the District stated that he was planning an appeal and that the District was refusing to comply with the ALJ's ruling. Id. ¶¶ 6-7. On August 30, 2010, another IEP took place, at which time the District indicated that it was not prepared to pay J.S.'s tuition at Stellar Academy by September 1, 2010, the first day of school. Id. ¶ 13. However, the District indicated that it would contact the school to see if it would "float" J.S. while the District further considered its options. Id. J.S. was able to begin attending Stellar Academy as of September 1, 2010, where he has since made significant progress academically, behaviorally and socially. Casillas Decl. ¶ 20. However, the school has notified J.S. that

unless payment for tuition is received, he will no longer be able to remain enrolled beyond November 30, 2010.  Id. Ex. D.

In the meantime, on September 2, 2010, the District filed the instant action against J.S., the OAH, Jack O'Connell in his capacity as California State Superintendent of Public Instruction, and the California Department of Education.[1]  Pursuant to the IDEA, the District seeks the review and reversal of the ALJ's Administrative Decision requiring the District to pay for J.S.'s tuition at Stellar Academy and to pay for his tutoring.  The District has now filed a motion for preliminary injunction to stay enforcement of the Administrative Decision.  J.S. has filed an opposition to the motion and a request for leave to file a cross-motion for a "stay put" order to maintain his placement at Stellar Academy and to otherwise compel the District to comply with the Administrative Decision.[2]  Because the stay put analysis necessarily informs the analysis germane to the District's motion, the Court addresses J.S.'s cross-motion first.

## II. DISCUSSION

### A. MOTION FOR STAY PUT ORDER

The IDEA provides that "[d]uring the pendency of *any* proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then *current educational placement* of such child...."  20 U.S.C. § 1415(j) (emphasis added); 34 C.F.R. § 300.518(a), (d).  "[C]ommonly referred to as the 'stay put' provision, [§ 1415(j)] requires the educational

---

[1] Subsequently, the District voluntarily dismissed all defendants, except for J.S.  Dkt. 44, 46.

[2] Contemporaneous with the filing of its opposition to the District's motion for preliminary injunction, J.S. filed an ex parte application seeking leave to file a "cross-motion" seeking a "stay put" order to compel the District to comply with the ALJ's Administrative Decision.  Dkt. 42.  Although J.S. failed to comply with the Civil Local Rules in submitting his ex parte application, the District failed to oppose J.S.'s request and has addressed the merits J.S.'s arguments in its reply brief.  Given that, coupled with the impending removal of J.S. from Stellar Academy, the Court grants J.S.'s ex parte request.  The Court notes, however, that both J.S. and the District repeatedly have failed to comply with the Civil Local Rules in this action.  Further violations of the applicable procedural rules will not be tolerated—and may result in the imposition of monetary sanctions against the parties and/or their respective counsel, or both.

agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved." Johnson v. Special Educ. Hearing Office, State of Cal., 287 F.3d 1176, 1179 (9th Cir. 2002).  If a stay put order is entered, the school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings.  Joshua A. v. Rocklin Unified School Dist., 559 F.3d 1036, 1040 (9th Cir. 2009).

A student may file a stay put motion during the pendency of any judicial proceeding, including an appeal from an ALJ's decision following a due process hearing.  Id. at 1038-39.  "A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief."  Joshua A., 559 F.3d at 1037.  In fact, "the stay put provision requires no specific showing on the part of the moving party … and no balancing of equities by the court …."  Id. at 1040.  The simplified procedure for obtaining a stay-put order is consistent with its purpose, which is "to ensure the child is not treated as a ping-pong ball, ricocheting between placements with each new ruling in the dispute between parents and school."  Ashland School Dist. v. V.M., 494 F. Supp. 2d 1180, 1229 (D. Or. 2007).

Although the IDEA does not define "current educational placement," courts have interpreted this phrase to mean "the placement described in the child's most recently implemented IEP."  Johnson, 287 F.3d at 1180.  At the same time, however, § 1415(j) also provides that the state and the parents may "otherwise agree" to an alternative placement, which then becomes subject to the stay put provision.  Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing, 903 F.2d 635, 641 (9th Cir. 1990) ("Clovis").  Such an agreement concerning the child's placement is "implied" where the parents receive a state administrative agency decision in favor of their choice of placement.  Id. (citing Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 372-73 (1985) ("Town of Burlington")).  The IDEA's implementing regulations, promulgated by the Department of Education in 2006, confirm this rule, providing that "[i]f the hearing officer

in a due process hearing ... agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents" for purposes of the stay put provision.  34 C.F.R. § 300.518(d).

Here, the ALJ found, inter alia, that "the District failed to provide or offer [J.S.] a FAPE for the 2007-2008, 2008-2009 and 2009-2010 school years" and that he has suffered "serious academic deficits as a result …." AD 33.  The ALJ agreed with J.S.'s parents that the program at Stellar Academy afforded "an effective means of meeting the Student's needs that have resulted from his specific learning disability, and the District's failure to provide him with an appropriate program and services for three years." AD 34.  As such, Stellar Academy is J.S.'s current educational placement for purposes of the stay put provision of the IDEA.  Clovis, 903 F.2d at 641; 34 C.F.R. § 300.518(a), (d).[3]

The District argues that the Court should ignore § 300.518 on the ground that it "went farther than what was intended by Congress or the Supreme Court," and instead, deem the District as J.R.'s current educational placement.  Pl.'s Reply at 7-8.  However, this implementing regulation simply mirrors the interpretation of the IDEA set forth in Clovis, which held that "once the State educational agency decided that the parents' placement was the appropriate placement, it became the 'then current educational placement' within the meaning of section 1415(e)(3)." 903 F.3d at 641 (quoting in part Town of Burlington, 471 U.S. at 372-73).  The District also argues that its educational program is "objectively better" than that of Stellar Academy.  Id. at 5.  Setting aside the fact that the ALJ reached the opposite conclusion, whether or not that is, in fact, correct has no bearing upon J.S.'s right to remain in his current educational placement at Stellar Academy under the stay put provision of the IDEA.  See Joshua A., 559 F.3d at 1037.

In sum, the Court is persuaded that Stellar Academy is J.S.'s current educational placement, within the meaning of the IDEA.  J.S.'s motion is therefore GRANTED and the

---

[3] Moreover, it bears noting that the District's request to Stellar Academy to "float" J.S.'s tuition so that he could begin attending by September 1, 2010, effectively facilitated J.S. current educational placement at that facility.

District is ordered to comply with the terms of the Administrative Decision, unless and until otherwise ordered by the Court.

### B. THE DISTRICT'S MOTION FOR PRELIMINARY INJUNCTION

Under Federal Rule of Civil Procedure 65, "[d]istrict courts have broad discretion to grant or deny preliminary injunctive relief." Squaxin Island Tribe v. State of Wash., 781 F.2d 715, 724 (9th Cir. 1986). The party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., --- U.S. ---, 129 S.Ct. 365, 376 (2008).

The District's motion for preliminary injunction seeks to stay the ALJ's Administrative Decision, thereby immediately relieving the District of its obligation under the IDEA to pay for J.S.'s placement at Stellar Academy. It is readily apparent that the District's motion is an attempt by the District to preclude J.S.'s ability to invoke his stay put right. However, as discussed above, the stay put provision operates as an "automatic" preliminary injunction, whereby the traditional factors for preliminary injunctive relief have no application. See Joshua A., 559 F.3d at 1037; c.f., N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104, 1112 (9th Cir. 2010) (noting that the stay put provision, not the preliminary injunction standard, applies where the right to a stay put order is directly at issue). While a court can change a child's placement "notwithstanding the stay put provision … upon a showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others," no such showing has been made by the District in this case. See Joshua A., 559 F.3d at 1039 (citing Honig v. Doe, 484 U.S. 305 (1988)).

Even if the preliminary injunction test were germane, the District has failed to carry its burden of demonstrating that such relief is appropriate. The Supreme Court has recognized that a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S.Ct.

at 376.  This "clear showing" requires a plaintiff to show more than a mere "possibility" of irreparable harm, but instead they must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  Id. at 375 (emphasis in original); Am. Trucking Ass'ns Inc. v. City of Los. Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  In this case, the only irreparable harm asserted by the District is that, in the absence of an injunction, it will be forced to pay for J.S.'s placement at Stellar Academy and for tutoring services.  Pl.'s Mot. at 9.  The District also complains that it will be irreparably harmed by having to expend attorneys' fees in challenging the Administrative Decision.  Id.

The Ninth Circuit has repeatedly held that "monetary harm does not constitute irreparable harm."  Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 851 (9th Cir. 2009); accord Am. Trucking Ass'ns, 559 F.3d at 1057.  Though the District claims that "there is no legal way for it to recover payments made during the pendency of appeal from the parents of a student," Pl.'s Mot. at 9, that is simply how the stay put provision of the IDEA operates.  "Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal."  L.M. v. Capistrano Unified School Dist., 556 F.3d 900, 912 (9th Cir. 2009) (citing Clovis, 903 F.2d at 641).  Thus, the District's argument that the payment of J.S.'s placement at Stellar Academy constitutes "irreparable harm" is incompatible with the IDEA, which expressly affords such a remedy to the aggrieved student.

In any event, the alleged monetary harm asserted by the District is grossly overstated.  The District speculates that J.S. will "fight this appeal and 'drag it out' until the Student has graduated from the District," which purportedly will cost over $100,000.  Pl.'s Mot. at 9.[4]  In fact, the Stellar Academy fee agreement shows that the cost to attend the school is $15,500 per year; of that amount, $14,700 may be paid over the course of ten installments.  Castillos Decl. Ex. D.  Moreover, the District's unsupported assertion that

---

[4] This contention is somewhat ironic given that it is the District, not J.S., which has chosen to appeal the ALJ's decision, thereby extending the litigation in this matter.

this case will "drag" on for three years is entirely speculative.  In this Court's experience, cases of this nature are resolved in far shorter time periods.  As for the expenditure of attorneys' fees, the law is clear that the inability to recoup such costs is insufficient to show irreparable harm.  See F.T.C. v. Standard Oil Co. of Cal., 449 U.S. 232, 244 (1980) (rejecting defendant's reliance on "the expense and disruption of defending itself in protracted adjudicatory proceedings" as sufficient to constitute irreparable harm); Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974) ("[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); Los Angeles Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980) ("[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough") (internal quotations and citations omitted).

Finally, the Court finds that the balance of equities and public interest, neither of which are discussed in the District's moving papers, also weigh against the preliminary injunction sought by the District.  The record reflects that J.S. has improved academically, socially and behaviorally since his placement at Stellar Academy.  Casillas Decl. ¶ 20.  Granting the District's motion would result in J.S. being removed from Stellar Academy, which will not permit him to remain enrolled past November 30, 2010, absent payment.  Id. Ex. D.  This transfer would likely be destabilizing to J.S., and potentially interfere with his progress at Stellar Academy.  Under these circumstances, the equities and public interest strongly favor J.S.  Based on the foregoing, the Court is unpersuaded by the District that a preliminary injunction is appropriate in this case.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. J.S.'s ex parte application to file a cross-motion for a stay put order is GRANTED.

2. J.S.'s motion for a stay put order under the IDEA is GRANTED. The Court finds that Stellar Academy is J.S.'s current educational placement for purposes of 20 U.S.C. § 1415(j), and the District shall comply with its legal obligations under the IDEA, and as set forth in the ALJ's Administrative Decision.

3. The District's motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated: November 18, 2010

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge